Aaron W. Baker, OSB No. 922220
Email: aaron@awbakerlaw.com
Serena L. Liss, OSB No. 154799
Email: serena@awbakerlaw.com
BAKER LAW PC
One SW Columbia, Suite 1850
Portland, OR 97204
Phone: 503/ 234-8800
Fax: 503/ 525-0650

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **IAN MICHAEL**, <br><br> Plaintiff, <br><br> v. <br><br> **UBH OF OREGON, LLC dba CEDAR HILLS HOSPITAL,** <br><br> Defendant. | Case No. 3:22-cv-00638 <br><br> COMPLAINT <br><br> Unlawful Employment Practices <br><br> (Title VII, USERRA, FMLA, ORS 659A.030; ORS 659A.082, ORS 659A.183, Wrongful Discharge) <br><br> **DEMAND FOR JURY TRIAL** |

## Nature of the Action

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages, attorney fees, and injunctive relief for himself to redress injuries done to

COMPLAINT - 1

him by Defendant or officers, employees, or agents of said Defendant in contravention of his federally protected rights in violation of the Title VII of the Civil Rights Act of 1964, Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and the Family Medical Leave Act ("FMLA"), and his state protected rights in violation of Oregon anti-discrimination and anti-retaliation laws including ORS 659A.030, ORS 659A.082, ORS 659A.183, and common law wrongful discharge.

## Jurisdictional Allegations

2.

The court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000 *et seq.*, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

3.

Venue is proper within the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all the events or omissions giving rise to the claims arose in this judicial district.

## General Factual Allegations

4.

Defendant was and is at all material times herein mentioned a Delaware Limited Liability Corporation with its principal place of business in Portland, Oregon. Defendant does business as Cedar Hills Hospital.

5.

At all material times herein, Defendant employed 25 or more employees in the state of Oregon.

6.

Defendant transacted business, including but not limited to hiring and employing Plaintiff, in Portland, Oregon.

///

7.

Plaintiff was and is a resident of Oregon at all material times herein unless otherwise so stated.

8.

At all material times herein, Plaintiff was supervised by Defendant's employees or agents and Plaintiff relied on the actual or apparent authority of Defendant's employees, supervisors, and management for Defendant.

9.

Defendant discriminated against Plaintiff by engaging in and/or allowing a continuing course of conduct, including but not limited to, discrimination and harassment due to Plaintiff's sex, sexual orientation, and/or veteran status, and retaliated against Plaintiff for reporting and opposing said harassment and discrimination and retaliated against Plaintiff for inquiring about and/or invoking his rights and/or utilizing, for attempting to utilize protected medical leave.

10.

Plaintiff is a gay male United States Marine Corps veteran.

11.

Plaintiff worked at least 25 hours per week in the 180 days preceding any need for protected leave.

12.

Defendant hired Plaintiff on or about December 2, 2019 as a Military Liaison at the Cedar Hills Hospital.

13.

During Plaintiff's employment with Defendant Plaintiff was subjected to severe and/or pervasive discriminatory comments and actions based on his sex and/or sexual orientation including but not limited to the following:

    a.    Michael Sorenson, Defendant's Director of Business Development, sent text messages to Plaintiff with "XO," which Plaintiff understood meant "hugs and kisses."

b.     Mr. Sorenson told Plaintiff he had to check in with him each night during the week of Plaintiff's orientation. During the check-ins, Mr. Sorenson would ask Plaintiff for drinks and/or dinner after work. Plaintiff declined, stating that he needed to go home.

c.     On at least four occasions, Mr. Sorenson asked Plaintiff to attend a gay strip club with Mr. Sorenson.

d.     In or about early December of 2019, Plaintiff was in Mr. Sorenson's car to go to the print shop. Mr. Sorenson talked to Plaintiff about Mr. Sorenson's ex-boyfriend and how the ex-boyfriend would not have sex with Mr. Sorenson anymore. Mr. Sorenson made comments about Plaintiff, including that Plaintiff probably does not have those problems. During the drive back, Mr. Sorenson asked Plaintiff to go to happy hour with him. When Plaintiff declined and stated that he would rather go home because he had a long drive to Salem, Mr. Sorenson told Plaintiff he would need to go back to work if he would not go to happy hour.

e.     On or about December 12, 2019, Mr. Sorenson told Plaintiff after a work event that coworkers were meeting to have celebratory drinks. When Plaintiff arrived, only Mr. Sorenson was there. While Plaintiff was there, Mr. Sorenson asked Plaintiff if he was dating anyone. The next day, Plaintiff asked coworkers why they did not go out for drinks, and they responded that they were not invited.

f.     When Plaintiff would decline Mr. Sorenson's invitations, Mr. Sorensen would make various comments causing Plaintiff to understand that he would be retaliated against for declining, including but not limited to "I would not have hired you if I knew you weren't a team player" or words to that effect.

g.     Plaintiff attended a holiday work party. After the party, he went to an after party with coworkers. The following day, Mr. Sorenson called

      Plaintiff into his office and asked Plaintiff where Plaintiff went the night before. When Plaintiff responded that he was with coworkers, Mr. Sorenson told Plaintiff it was fraternization, which according to Mr. Sorenson, was a fireable offense. Mr. Sorenson yelled, "you're an executive, so start acting like one" or words to that effect. Plaintiff reponded that Mr. Sorenson's invitations were fraternization, and Mr. Sorenson slammed his hand down on the desk and said "it doesn't matter" or words to that effect. Then, Mr. Sorenson told Plaintiff Defendant's CEO C. Lamar Frizzell witnessed Plaintiff fraternizing with coworkers, but Mr. Sorenson "went to bat" for Plaintiff and told Mr. Frizzell that Plaintiff was "being a team player and getting to know staff" or words to that effect. Mr. Sorenson explained to Plaintiff that Mr. Frizzell agreed to not fire Plaintiff for fraternization.

h. On a Sunday in late December of 2019, Mr. Sorenson instructed Plaintiff to attend an evening event in a residential building in the Portland Waterfront Towers. When Plaintiff was approximately two minutes away, Mr. Sorenson called Plaintiff to inform him that the event was cancelled. Nonetheless, Mr. Sorenson invited Plaintiff to dinner and drinks allegedly because Plaintiff was so close. Plaintiff declined and drove back home.

i. In or about early January 2020, Mr. Sorenson set a meeting with Plaintiff for January 16, 2020. Without notice, Mr. Sorenson changed the time of the meeting to a time that Plaintiff was unavailable because he had previously been approved to attend a meeting at the Vet Center. Right away, Plaintiff sent an email to Mr. Sorenson stating that he could not attend at the new time, and requested the meeting be set earlier. On January 16, 2020, Mr. Sorenson demanded Plaintiff cancel his meeting at the Vet Center, which Plaintiff declined because cancelling just hours before the meeting would be

unprofessional. Mr. Sorensen set a one-on-one meeting with Plaintiff for January 21, 2022.

j. During the meeting on January 21, 2022, Mr. Sorenson was angry, slammed his hand down on the desk and yelled, "You are my subordinate! I am your boss! When I tell you to do something you do it!" or words to that effect. Mr. Sorenson issued Plaintiff a corrective action for missing the meeting on January 16, 2020 and for insubordination. After the meeting, Plaintiff wrote to Mr. Sorenson asking for information on Defendant's disciplinary process and asked to meet with HR to submit a response.

k. On January 22, 2022, Mr. Sorenson called Plaintiff into his office to discuss the corrective action. Plaintiff showed Mr. Sorenson his emails to prove that the corrective action was not warranted. Again, Mr. Sorenson got angry and told Plaintiff he needs to do what Mr. Sorenson tells him to do. As a Military Veteran, Mr. Sorenson's anger and aggressive posturing distressed Plaintiff. Plaintiff requested a meeting with Mario Bolivar, the Director of the Military Program at CHH. Additionally, Mr. Sorenson told Plaintiff that Mr. Frizzell knew about the write-up and told Mr. Sorenson he could keep it or throw it away. Thereafter, Mr. Sorenson left the write-up on his desk.

l. Plaintiff was scheduled to have dinner with Mr. Frizzel the night of January 22, 2020. Plaintiff was anxious before dinner because he feared he was going to be fired. Plaintiff was so anxious that he was sick, so went to the emergency department at the hospital after dinner.

m. On or about January 28, 2020, Plaintiff met with Mr. Bolivar and Mr. Sorenson. During the meeting, Mr. Bolivar praised Plaintiff. After the meeting, Mr. Sorenson sent Plaintiff a text message that stated, "love you."

///

n. Mr. Sorenson asked Plaintiff to take a trip with Mr. Sorenson for his birthday. Plaintiff declined, stating that he did not have enough paid time off. Mr. Sorenson responded that "we could work around it" or words to that effect.

o. On or about February 6, 2020, during Plaintiff's evaluation, Mr. Sorenson reminded Plaintiff that he still had Plaintiff's write-up should he need it. Mr. Sorenson then began talking about his upcoming fiftieth birthday and mentioned that he did not have friends and that he wished someone would do something for him for his birthday. Mr. Sorenson stated that he might throw himself a birthday dinner and asked Plaintiff if he would attend.

p. Plaintiff began working from home during the pandemic. Mr. Sorenson would be angry with Plaintiff during Zoom meetings. Then, after the meetings, Sorenson would call Plaintiff, stating that Plaintiff looked lonely or sad and asked Plaintiff if he should come over to keep Plaintiff company.

q. On or about June 5, 2020, Mr. Sorenson attempted to undermine Plaintiff's knowledge and expertise as Military Liaison regarding an email blast that Plaintiff said would hurt relationships with referral sources. Plaintiff felt Mr. Sorenson was retaliating against Plaintiff because he had turned down Mr. Sorenson's personal invitations previously. Plaintiff also felt Mr. Sorenson was discriminating against him because of his veteran status and his specialized expertise as a result of his status.

14.

On or about June 9, 2020, Plaintiff made a complaint and/or report to the Human Resources Department (hereinafter "HR") because he could no longer work under the conditions that Mr. Sorenson created.

///

15.

On or about June 15, 2020, HR Director Jenny Maxwell reached out to Plaintiff to inform him she had everything she needed to proceed with an investigation.

16.

On or about June 30, 2020, Plaintiff did not know what was going on with his complaint, so he reached out to HR again. Ms. Maxwell stated that she did not think Plaintiff's harassment complaint was "that serious" or words to that effect. She also told Plaintiff that his complaints were merely "interpersonal issues" and that they would not fire Mr. Sorensen. Plaintiff responded that his complaints were regarding sexual harassment and that his treatment by Mr. Sorenson was triggering his post-traumatic stress disorder (hereinafter "PTSD") and other disabilities. Ms. Maxwell told Plaintiff that this industry is challenging and that if Plaintiff felt his mental or physical health was at risk, then Plaintiff should look for another job or change careers. Ms. Maxwell also explained that Mr. Sorenson was sad and depressed. Ms. Maxwell informed Plaintiff that he would be removed from Mr. Sorenson's supervision and would instead be supervised by Alex Drilling. However, thereafter Plaintiff continued being supervised by Mr. Sorenson.

17.

On or about July 8, 2020, Plaintiff met with Ms. Maxwell, who told Plaintiff that Polly Costantini from corporate HR reviewed Plaintiff's claims and agreed with Ms. Maxwell. Ms. Maxwell told Plaintiff that his allegations "are destroying" Mr. Sorenson, or words to that effect. Plaintiff responded that Ms. Maxwell's comments about Mr. Sorenson minimized Plaintiff's claims while amplifying Mr. Sorenson's response. Plaintiff explained he expected Ms. Maxwell to remain neutral. Mr. Maxwell reminded Plaintiff that they are not friends. Plaintiff requested to move to the next step of the employee dispute resolution policy.

///
///

18.

On or about July 15, 2020, Plaintiff met with Mr. Frizzell and reported that he was being sexually harassed by Mr. Sorenson. Plaintiff explained that based on the company's response to his complaints he felt CHH might not be equipped to handle a male sexually harassing another male. Plaintiff also reported that he feared further retaliation for making complaints. Mr. Frizzel asked Plaintiff what outcome he sought. Plaintiff responded that he wanted to be able to do his job free of harassment and he needed to feel safe. Plaintiff also suggested a six-month evaluation as it would provide a fresh start. After the complaint, Mr. Frizzell did not follow up with Plaintiff again.

19.

On or about July 22, 2020, a meeting to go over the performance evaluation was set to occur by phone with Plaintiff, Ms. Maxwell, and Mr. Sorenson. However, Ms. Maxwell informed Plaintiff that she felt the meeting should be in person, so she cancelled the meeting and set an in-person meeting for the following day.

20.

On or about July 23, 2020, Mr. Sorenson and Ms. Maxwell gave Plaintiff a negative performance evaluation in retaliation for his complaints, for requesting OFLA leave, and/or for rebuffing Mr. Sorenson's advances. When Plaintiff went home that day, Plaintiff reached out to Ms. Maxwell to request she remove Plaintiff from Mr. Sorenson's supervision. Ms. Maxwell denied Plaintiff's request.

21.

On or about July 24, 2020, Plaintiff requested leave under the Oregon Family Leave Act (hereinafter "OFLA") due to the prolonged stress and anxiety caused by being supervised by Mr. Sorenson.

22.

On or about July 28, 2020, Plaintiff's OFLA claim was denied because Defendant reported that Plaintiff had worked an average of 21.2 hours per week for

the last 180 days. Plaintiff felt Defendant misreported his hours Plaintiff's hours in retaliation for his complaints.

23.

Plaintiff was approved for and began using continuous OFLA leave in or about September of 2020. Plaintiff took continuous Family Medical Leave Act (hereinafter "FMLA") leave in December of 2020 and January of 2021.

24.

Plaintiff made a report and/or complaint to HR manager, Ms. Costantini, who responded that Plaintiff's accusations were "very serious" or words to that effect and stated she would launch an investigation.

25.

After not hearing back from Ms. Costantini for some time, Plaintiff called the Corporate Compliance and Ethics Hotline to report the hostile work environment and retaliation. Plaintiff received no follow-up to his complaint.

26.

Ms. Costantini informed Plaintiff she had closed her investigation and instructed Plaintiff to go back to work under Mr. Sorenson's supervision.

27.

Plaintiff witnessed other employees being retaliated against for making complaints. He also saw employees' complaints being denied or concealed by Defendant.

28.

On or about November 20, 2020, Ms. Costantini sent Plaintiff a letter stating stated that "everyone takes your concerns very seriously" and "I regret you are unhappy." The letter goes on to state that "I can assure you all leadership will receive ongoing training including additional sexual harassment prevention training."

///
///

29.

Plaintiff understood he would be required to continue to work under the supervision of Mr. Sorenson when we would return to work from his FMLA leave. Plaintiff felt his complaints were "swept under the rug" and, based on his observations of Defendant's responses to employee complaints, he knew the hostile workplace would not improve. Therefore, Plaintiff had no reasonable alternative but to end his employment with Defendant on or about January 25, 2021.

30.

Plaintiff filed a Complaint with the Bureau of Labor and Industries ("BOLI") on or about January 26, 2022, which in turn filed the Complaint with the Equal Employment Opportunity Commission ("EEOC"). Both agencies closed their files and issued Notices of Right to File a Civil Suit. This Complaint has been filed within the prescribed deadline from each agency.

**First Claim for Relief**
**Title VII – Sex Discrimination**

31.

Plaintiff realleges paragraphs 1 through 30.

32.

Defendant discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to disciplining and/or constructively discharging Plaintiff, on the basis of his sex and/or sexual orientation in violation of Title VII.

33.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits including medical insurance, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

34.

As a direct and proximate result of Defendant's conduct Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

35.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

36.

Plaintiff is entitled to recover his costs and attorney fees pursuant to 42 U.S.C. § 1988 and Title VII.

37.

Plaintiff also seeks equitable relief including an injunction enjoining Defendants from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under federal law.

## Second Claim for Relief
## ORS 659A.030 – Sex Discrimination

38.

Plaintiff realleges paragraphs 1 through 36.

39.

Defendant discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to disciplining and/or constructively discharging Plaintiff, on the basis of his sex and/or sexual orientation in violation of ORS 659A.030.

40.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits

including medical insurance, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

41.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

42.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's state protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

43.

Plaintiff is entitled to recover his costs and attorney fees pursuant to ORS 659A.885 and ORS 20.107.

44.

Plaintiff also seeks equitable relief including an injunction enjoining Defendants from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under state law.

## Third Claim for Relief
## Title VII – Hostile Work Environment

45.

Plaintiff realleges paragraphs 1 through 42.

46.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise adversely affected his employment opportunities.

47.

Plaintiff realleges his damages as stated in paragraphs 33 through 37 above.

### Fourth Claim for Relief

### ORS 659A.030 – Hostile Work Environment

48.

Plaintiff realleges paragraphs 1 through 45.

49.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise adversely affected his employment opportunities.

50.

Plaintiff realleges his damages as stated in paragraphs 40 through 44 above.

### Fifth Claim for Relief
### Title VII – Retaliation

51.

Plaintiff realleges paragraphs 1 through 48.

52.

Defendant discriminated against Plaintiff in the terms and conditions of his employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated Title VII.

53.

Plaintiff realleges his damages as stated in paragraphs 33 through 37 above.

### Sixth Claim for Relief
### ORS 659A.030 – Retaliation

54.

Plaintiff realleges paragraphs 1 through 51.

///

55.

Defendant discriminated against Plaintiff in the terms and conditions of his employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated ORS 659A.030.

56.

Plaintiff realleges his damages as stated in paragraphs 40 through 44 above.

## Seventh Claim for Relief

## 38 U.S.C. § 4311 – USERRA Discrimination

57.

Plaintiff realleges paragraphs 1 through 54.

58.

Defendants discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to disciplining and/or constructively discharging Plaintiff in motivating part due to Plaintiff's membership, performance of service, and/or obligation for service in the uniformed services.

59.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in benefits, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial pursuant to 38 U.S.C. § 4323(d)(1)(B). Plaintiff will continue to have lost income and benefits into the future.

60.

Defendants' conduct was willful. Therefore, Defendants should be assessed liquidated damages in an amount equal to the lost wages and benefits pursuant to 38 U.S.C. § 4323(d)(1)(C).

61.

Plaintiff is entitled to recover his reasonable attorney fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h).

62.

Pursuant to 38 U.S.C. § 4323(e), Plaintiff also seeks equitable relief including an injunction enjoining Defendants from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under federal law.

### Eighth Claim for Relief
### ORS 659A.082 – Military Discrimination

63.

Plaintiff realleges paragraphs 1 through 62.

64.

Defendants discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to disciplining and/or constructively discharging Plaintiff in motivating part due to Plaintiff's service in the uniformed services, including Plaintiff's exercising and/or attempting to exercise his status.

65.

Plaintiff realleges his damages as stated in paragraphs 40 through 44 above.

### Ninth Claim for Relief
### FMLA – Medical Leave Interference, Discrimination or Retaliation

66.

Plaintiff realleges paragraphs 1 through 65.

67.

At all material times, Plaintiff had been employed by Defendant for 12 months and had performed at least 1,250 hours of service for Defendant during the preceding 12-month period.

68.

At all material times, Plaintiff suffered from a serious health condition.

69.

Plaintiff utilized leave that was protected leave under FMLA.

///

///

70.

As set forth above, Defendant denied, interfered with, discriminated and/or retaliated against Plaintiff for utilizing protected medical leave.

71.

In perpetrating the above actions, Defendant violated 29 U.S.C. § 2601 *et seq.* causing Plaintiff to suffer damages.

72.

As a result of Defendant's unlawful conduct, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in benefits, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

73.

In perpetrating the above actions, Defendant acted willfully and with knowledge that its actions were in violation of FMLA or with reckless disregard of whether it was violating FMLA. As such, Plaintiff is entitled to liquidated damages for Defendant's violation of his FMLA rights in an amount equal to the sum of Plaintiff's lost wages and benefits, plus prejudgment interest thereon pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

74.

Plaintiff is entitled to recover his costs and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3).

### Tenth Claim for Relief
### ORS 659A.183 – OFLA Interference, Discrimination, and/or Retaliation

75.

Plaintiff realleges paragraphs 1 through 74.

76.

At all material times, Plaintiff worked an average of at least 25 hours per week.

77.

Plaintiff inquired about, utilized, and/or attempted to utilize leave that was protected under Oregon law.

78.

As set forth above, Defendant denied, interfered with, discriminated, and/or retaliated against Plaintiff for invoking and/or attempting to utilize protected OFLA leave by taking adverse employment against Plaintiff, including but not limited to disciplining and/or constructively discharging Plaintiff.

79.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial and Plaintiff will continue to have lost income and benefits into the future.

80.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's state protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

81.

Plaintiff is entitled to recover his reasonable attorney fees, expert fees, costs, and disbursements pursuant to ORS 659A.885.

## Eleventh Claim for Relief

## Wrongful Discharge

82.

Plaintiff re-alleges paragraphs 1 through 81.

83.

At all material times, the public policy of Oregon and the United States prohibits an employer from retaliating against an employee for invoking his need

for, utilizing and/or attempting to utilize leave that was protected under Oregon and/or Federal law. This public policy is embodied in common law, statutes, and regulations of the State of Oregon and the United States protecting the public and employees including but not limited to OFLA, FMLA, and *Yeager v. Providence Health System Oregon*, 195 Or. App. 134 (2004).

84.

Defendants, through their agents and/or employees, violated the above public policies by retaliating against Plaintiff for inquiring about and/or invoking his rights and/or utilizing and/or attempting to utilize protected sick time. The discharge was unlawful and in violation of the public policy of the State of Oregon.

85.

Defendants' discharge of Plaintiff was in retaliation for Plaintiff's pursuit and exercise of Plaintiff's rights related to Plaintiff's role as an employee, which are of important public interest.

86.

Plaintiff realleges his damages as stated in paragraphs 40 through 44 above.

### Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For permanent injunctive relief enjoining Defendant, its officers, employees, and agents from engaging in any harassment or discrimination or for retaliating against any employee opposing unlawful employment practices;
2. Economic damages and future losses to be determined at trial;
3. Non-economic damages to be determined at trial;
4. Liquidated damages in an amount to be determined at trial;
5. Punitive damages in an amount to be determined at trial;
6. Reasonable costs and attorney fees; and

///

///

7.   For such other and further relief as the Court may deem just and equitable.

DATED this 29th day of April, 2022.

                BAKER LAW PC

                *s/ Serena L. Liss*
                Aaron W. Baker, OSB No. 922220
                Serena L. Liss, OSB No. 154799
                Attorneys for Plaintiff